# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:10-cv-523-RJC

| | |
|---|---|
| EMANUEL GLOVER, )<br>)<br>       Plaintiff, )<br>)<br>v. )<br>)<br>)<br>ARTHUR DEVON YOUNG, )<br>)<br>       Defendant. )<br>) | **ORDER** |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment, (Doc. No. 16), and Defendant's Motion for Summary Judgment, (Doc. No. 20).

**I.	BACKGROUND**

Plaintiff is a former inmate incarcerated by the North Carolina Department of Correction ("DOC") at Charlotte Correctional Center ("Charlotte CC"). In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff contends that Defendant used excessive force when he deployed pepper spray on June 9, 2008, at Charlotte CC. For relief, Plaintiff seeks compensatory, nominal, and punitive damages totaling $75,000. (Doc. No. 1: Complaint). Defendant filed the pending motion for summary judgment on March 20, 2011. On September 8, 2011, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the importance of filing a response to Defendant's motion and of the manner in which evidence could be submitted to the Court. See (Doc. No. 22). On October 7, 2011, Plaintiff filed his Response. (Doc. No. 24).

As shown by Defendant's statement of undisputed facts (which is based on Defendant's admissions to allegations made in the Complaint), on June 9, 2008, Defendant Young, a

correctional officer, attempted to perform a search of Plaintiff's locker at Charlotte CC. (Doc. No. 9 at 4). During the search of Plaintiff's locker, food-item contraband known as a "pack out" was found in Plaintiff's locker. (Id.). Defendant Young ordered Plaintiff to leave the dorm and, while Plaintiff was exiting the dorm, Defendant Young used pepper spray against Plaintiff.[1] (Id. at 5). Defendant Young admits that he received an adverse employment action from the DOC for his actions. (Doc. No. 9: Answer at § V ¶ 6).

That same night, Plaintiff was taken to a local emergency room, where his eyes were irrigated, and he was released back into the custody of the North Carolina Department of Correction. (Id. ¶ 4). According to the records submitted by Plaintiff, hospital staff observed Plaintiff as mild and alert in appearance. (Doc. No. 16 at 12). Hospital staff also noted that the pepper spray had not damaged Plaintiff's skin, a physical examination showed no other visible injury, Plaintiff's only complaint to treating staff was burning in his eyes, and Plaintiff denied that he had any other signs or symptoms of trauma. (Id. at 12-16).

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

---

[1] Plaintiff also alleged, and Defendant has denied, (Doc. No. 9: Answer at § III ¶ 8), that Defendant proceeded "to kick and punch him in his back and head, while Mr. Glover lay on the ground," (Doc. No. 1: Complaint at 3).

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In this case, cross-motions for summary judgment have been filed. Where cross motions for summary judgment are filed, such motions are:

> no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

> In short, the mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury.

10A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2720 (3d ed. 1998).

## III. DISCUSSION

### A. Defendant's Single Use of Pepper Spray Against Plaintiff

Plaintiff brings a claim for the use of excessive force in a prison environment in violation of the Eighth Amendment prohibition against cruel and unusual punishment.

> It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.

Whitley v. Albers, 475 U.S. 312, 319 (1986); Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (plaintiff must show infliction of unnecessary and wanton pain and suffering). Where force is used in the course of a prison disturbance, the question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21 (citation omitted). Such factors as the need for application of force, the relationship between need and amount of force used, and extent of injury inflicted are relevant to the ultimate determination. See Gray v. Spillman, 925 F.2d 90, 93 (4th Cir. 1991); Miller, 913 F.2d at 1087.

To establish an Eighth Amendment claim, Plaintiff must demonstrate both objective and subjective components. Williams. v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996); Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998). Under the objective component, a court must determine whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. Hudson v. McMillian, 503 U.S. 1, 8 (1992). Proof of the subjective

4

component requires a showing that prison "officials applied force 'maliciously and sadistically for the very purpose of causing harm.'" Williams, 77 F.3d at 761 (quoting Whitley, 475 U.S. at 320-21). Thus, the core judicial inquiry in an excessive force case is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). Furthermore, as the Supreme Court made clear in Wilkins v. Gaddy, although a court may not grant summary judgment simply based on the fact that plaintiff suffered only de minimis injuries, the extent of injury to the plaintiff is relevant in determining how much force was used. The Wilkins Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Wilkins, 130 S. Ct. at 1178-79 (citations omitted).

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (i) "the need for the application of force," (ii) "the relationship between the need and the amount of force that was used," (iii) the threat reasonably perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (quotations omitted). "Moreover, we must accord due

5

deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" Scarbro v. New Hanover Cnty., 374 F. App'x 366, 370 (4th Cir. 2010) (quoting Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999)).

Notably, the United States Court for the Eastern District of North Carolina has recently applied Wilkins in a Fourth Amendment context, granting summary judgment for the defendant officer. McMillian v. LeConey, No. 5:09-cv-175, 2011 WL 2144628 (E.D.N.C. May 31, 2011). In McMillian v. LeConey, the Eastern District of North Carolina held that, despite Plaintiff's subjective claims of a head injury, there was "no indication in the evidence presented . . . that any excessive amount of force was used or that plaintiff suffered any injuries whatsoever . . . ." Id. at *10. While the court in McMillian acknowledged that, under Wilkins, "the lack of serious physical injury is not, in itself, dispositive of a Fourth Amendment excessive force claim," it stated:

> Under the totality of the circumstances in this case, plaintiff's allegations simply do not rise to the level of objective unreasonableness necessary to sustain an excessive force claim. . . . Even though plaintiff maintains that he was "slammed" into a wall and/or the ground, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment."

Id. (citations omitted).

Likewise, this Court has found that a plaintiff's lack of resulting injury from a single burst of pepper spray suggested that the amount of force used was not sufficiently serious to support a claim of excessive force and granted summary judgment in the defendant officer's favor. In Trusell v. Bailey, this Court stated:

> The single burst of pepper spray after a verbal confrontation about which Plaintiff complains constitutes a minimal use of force paired with de minimis injury. In

6

> this context, such force is not of a sort repugnant to the conscience of mankind, and it is excluded from constitutional recognition under the Eighth Amendment's prohibition of cruel and unusual punishment.

No. 5:09-cv-101, 2011 WL 972571, at *7 (W.D.N.C. Mar. 15, 2011) (Conrad, C.J.) (footnote omitted); compare Iko v. Shreve, 535 F.3d 225, 233 (4th Cir. 2008) (defendant officer continued spraying pepper spray even after plaintiff inmate complied with orders).

The Court has reviewed the evidence presented in this case and finds the fact pattern here almost indistinguishable from that in Trusell. Here, a prison guard and an inmate engaged in a verbal altercation, the guard perceived that the inmate was not obeying orders and was posing a physical threat, and the guard deployed a single burst of pepper spray to his head area which "lasted for approximately one second." (Doc. No. 21-1: Affidavit of Young at ¶ 18). It is also undisputed that medical attention was promptly sought, relief from the effects of the pepper spray was provided, and no further injuries were noted by medical personnel. Indeed, Plaintiff's medical records reveal that Plaintiff was observed as mild and alert in appearance following the incident. (Doc. No. 16 at 12). Hospital staff also noted that the pepper spray had not damaged Plaintiff's skin, the physical examination of his person showed no other visible injury, Plaintiff's only complaint to treating staff was burning in his eyes, and Plaintiff denied that he had any other signs or symptoms of trauma. (Id. at 12-16). In his Complaint, Plaintiff claims that he is "physically scarred." (Doc. No.1 at 4). Assuming that Plaintiff meant "emotionally scarred," he has submitted no evidence of mental health issues linked to this event.

To survive summary judgment, Plaintiff must show that Defendant Young acted maliciously and sadistically with the purpose of causing Plaintiff harm. The Court has considered each Whitley factor, including the need for the application of force, the relationship between the need and the amount of force that was used, the threat reasonably perceived by the

responsible officials, and any efforts made to temper the severity of a forceful response. In doing so, Plaintiff's perception of the need for application of force is not relevant; rather, it is the perception of the Defendant that must be considered. In this case, the Court has considered the affidavit of Defendant, which in pertinent part provides:

> 16. I then again ordered Plaintiff to remove the items from the bag, and he refused to do so. Plaintiff then stood up from his chair and began putting on work boots. I ordered Plaintiff to stop what he was doing and to return to sitting because I had my back to him. Plaintiff continued standing, turned, and grabbed a chair. Plaintiff threw the chair against the locker and stated "why you fucking with me?" and various other profanities.
>
> 17. At that point, I ordered Plaintiff to exit the dorm and I followed him. As he was walking, Plaintiff continued to yell profanities.
>
> 18. The dorm resembles a trailer and, as you exit, there are stairs. Once Plaintiff reached the bottom of the stairs, he turned and raised his hand as if to strike me. At that point, I used one burst of my OC spray against Plaintiff to stop him from advancing towards me. The spray lasted for approximately one second and was aimed towards Plaintiff's forehead due to his glasses.
>
> 19. Plaintiff then continued to reach towards me and I ordered him to the ground. Plaintiff continued to yell and resist my orders. In order to gain control of the Plaintiff, I took Plaintiff to the ground and handcuffed him. To handcuff him, I placed my left hand on Plaintiff's left wrist and right hand on Plaintiff's shoulder. I used an arm bar and then proceeded to handcuff Plaintiff.

(Doc. No. 21-1: Affidavit of Young at ¶¶ 16-19). The Court finds that Defendant had a need for application of force, as Defendant perceived that Plaintiff was not only failing to obey lawful commands, but was preparing to strike Defendant. The amount of force employed through the single burst of pepper spray which lasted for approximately one second and use of the arm bar was proportional to the threat perceived. Finally, Defendant first attempted to avoid the use of any physical force by seeking voluntary compliance. There is no evidence of record to support a

showing that Defendant acted maliciously or sadistically.[2]

      B.      Kicks and Punches

Plaintiff has alleged in his Complaint and in his Response that Defendant "kicked and punch[ed] me to the ground . . . ." (Doc. No. 24: Affidavit of Glover at ¶ 13). While Defendant generally denies kicking and punching Plaintiff, he does admit that he applied physical force in bringing Plaintiff to the ground after deploying pepper spray. There is no dispute that a physical struggle ensued after the pepper spray was employed and before Plaintiff was handcuffed. While Plaintiff contends there were punches and kicks, there is no contention that any kicks or punches were thrown after Plaintiff was subdued and handcuffed. Cf. McMillian v. Wake Cnty. Sheriff's Dep't, 399 F. App'x 824, 828 (4th Cir. 2010) ("[W]e cannot say, as a matter of law, that knocking down, punching, and kicking an arrestee while he is in handcuffs are actions taken in good faith to restore order") (emphasis added).

Review of Exhibit C to Defendant's affidavit indicates that Defendant filled out an incident report within four hours of the altercation. In such report, Defendant states that after he sprayed Plaintiff with pepper spray, Plaintiff still refused commands to get to the ground. Defendant stated in such report that "I then grabbed his arm and took him to the ground." (Doc. No. 21-1: Affidavit of Glover at 27). The question for the Court is whether Plaintiff's contention that kicks and punches were thrown is sufficient to warrant trial. The Supreme Court has held:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

---

[2] While it is undisputed that Defendant was disciplined by the DOC for his actions in this incident, the reprimand was for not calling in back up.

Scott v. Harris, 550 U.S. 372, 380 (2007) (where a videotape utterly discredited plaintiff's version of the facts).

While no one has submitted video evidence in this case, Defendant's nearly contemporaneous, sworn recounting of events in the incident report, coupled with Plaintiff's statements to hospital staff and undisputed evidence that Plaintiff was not injured, leads the Court to conclude that the fact that Defendant may have thrown punches or landed kicks is not material here. Indeed, the parties are in agreement that physical force was used after pepper sprayed was deployed; however, Plaintiff does not allege that any blows were delivered after he was brought into submission and handcuffed. As discussed above, not only was medical assistance promptly provided, but Plaintiff's only complaint to treating medical personnel was burning in his eyes.

Assuming for purposes of summary judgment that Defendant used punches and kicks to bring Plaintiff into submission, and that the nearly contemporaneous incident report coupled with the medical evidence do not amount to a "blatant contradiction" under Scott, the Court will again apply the factors outlined in Whitley to such use of force. In doing so, the Court has considered the need for the application of the alleged force, the relationship between the need and the amount of force that was used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. At the point when punches and kicks were allegedly used by Defendant, the pepper spray had apparently failed in deterring Plaintiff, verbal commands were still being ignored, and Defendant perceived an immediate threat. In his official report, Defendant recounted:

> Inmate Glover started to reach for me in an aggressive manner as he walked towards me. I then ordered [him] to the ground in a loud and clear voice and he did not obey my commands. I then ordered him to the ground again and he did

10

> not obey my command and kept coming, I then grabbed his arm and took him to the ground and he kept resisting and hollering "my lawyer going to hear about this shit" "I'm calling my lawyer, I'm calling my lawyer!" as I tried to restrain him with handcuffs while using verbal commands.

(Doc. No. 21-1: Affidavit of Glover at 27). While injury and force are "only imperfectly correlated," Wilkins, 130 S. Ct. at 1178, and it is the force employed which is the core of the cruel and unusual punishment inquiry under the Eighth Amendment, injury or the lack thereof, while not conclusive, can at times be an objective indicator of the degree of force that was employed.

Here, it is undisputed that Plaintiff received prompt medical attention not just at the prison facility, but also at a local emergency room. Other than treating the irritation caused to Plaintiff's eyes by the pepper spray, medical professionals reported no other injuries. Indeed, the record evidence reveals that the only complaints Plaintiff made to medical professionals concerned his eyes. Even if the Court assumes that blows were landed in bringing Plaintiff into submission, there is no objective evidence that would support a finding that the blows were delivered gratuitously, maliciously, or sadistically by Defendant.[3] Plaintiff has, therefore, failed to come forward with objective evidence that would support a jury finding in his favor on such claim.

    C.    <u>Consideration of Force in its Entirety</u>

Finally, the Court has considered whether Plaintiff's proffer of evidence as to the use of pepper spray followed by the use of hands-on tactics is sufficient to show an excessive use of force violative of the protections afforded under the Eighth Amendment. Here, it appears that

---

[3] Plaintiff does not allege that Defendant punched or kicked him after he was placed in handcuffs.

while such separate measures were used in close proximity to each other, the force employed was a reasonable and gradual escalation in the continuum of use of force. The overall force used was only that which was necessary to gain compliance with lawful orders of a correctional officer. The single burst of pepper spray used against Plaintiff, followed by more physical contact when such deterrent failed, was all done in a good faith effort to restore order, was not force "of a sort repugnant to the conscience of mankind," Whitley, 475 U.S. at 327, and was, thus, not sufficient to show a constitutional violation under the Eighth Amendment.

    D.    Qualified Immunity

Defendant has also moved for summary judgment based on qualified immunity. Because the Court finds that there was no constitutional violation, the Court need not address Defendant's qualified immunity argument. See Yacovelli v. Moeser, 324 F. Supp. 2d 760, 765 (M.D.N.C. 2004) ("Because, as previously discussed, no constitutional deprivation has been alleged, the Court need not address whether Defendants are entitled to qualified immunity.").

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 16), is **DENIED;**
2. Defendant's Motion for Summary Judgment, (Doc. No. 20), is **GRANTED**; and
3. This action is **DISMISSED** with prejudice.

Signed: March 12, 2012

_[signature]_

Robert J. Conrad, Jr.
Chief United States District Judge